IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERCIA,**

    **Plaintiff,**

**V.**                                                                                          **12CR1922 WJ**
                                                                                                **07CR1334 WJ**

**ADRIAN MIKE,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER OVERRULING IN PART AND SUSTAINING IN PART DEFENDANT'S OBJECTIONS TO THE IMPOSITION OF SPECIAL CONDITIONS OF RELEASE**

**THIS MATTER** comes before the Court upon Defendant's objections to special conditions of supervised release raised in his Sentencing Memorandum, filed February 4, 2013 (**Doc. No. 35**). Having considered the parties' briefs[1], arguments at the hearing conducted on November 15, 2013, and the applicable law, the Court finds that Defendant's objections are partially well-taken and, therefore, are OVERRULED in part and are SUSTAINED in part.

## Background

In the underlying criminal matter, 07CR1334, Defendant pled guilty to assault resulting in serious bodily injury. As part of his plea agreement, Defendant admitted that he and several other individuals were drinking in the victim's home. When the elderly victim noticed that his television was damaged, he confronted Defendant. Defendant shoved the victim to the ground causing the victim to suffer multiple broken bones. Defendant was intoxicated at the time of the altercation. Defendant was serving a term of supervised release for the assault and as part of that sentence was sent to a halfway house for treatment for his severe alcohol addiction. Defendant

---

[1] On December 4, 2013, Defendant filed a Supplemental Sentencing Memorandum (**Doc. No. 143**) providing additional argument in support of his position that his previous conviction for failure to register as a sex offender was not considered a sex offense. The Court did not base its decision upon a belief that failure to register as a sex offender is a sex offense. Accordingly, Defendant's argument has no impact on the Court's decision; therefore, the United States is not prejudiced by the fact that it did not have an opportunity to respond to the Supplemental Sentencing Memorandum before the Court issued the instant Order.

left the halfway house without permission and failed to return. In fact, when law enforcement located Defendant, he was passed out drunk which constituted evidence that Defendant violated another condition of his supervised release; the prohibition against consuming alcohol. Defendant's conduct resulted in the United States taking action as follows: First, a new case was filed charging Defendant with the crime of escape (12CR1922) and second, a petition to revoke supervised release was filed in the case under which Defendant was serving his term of supervised release (07CR1334). Defendant has admitted to the factual basis for each of the charges and the Court is handling these matters jointly although there are still two separate case numbers. Parties' briefing on the issue of sentencing raises the same arguments in both cases. Defendant's guideline range on the escape charge is 15-21 months and his guideline range on the revocation is 21-27 months. The United States asks for an upward variance to the statutory max of five years for the escape, and for the statutory max of 24 months on the revocation for a total term of 84 months.[2] The issue of upward variance will be addressed when the Court sentences Defendant. Accordingly, this Order pertains only to the issues surrounding the conditions of supervised release that will be imposed on Defendant at the time of sentencing.

The United States Probation Office ("USPO") recommends that Defendant be placed under the District of New Mexico's standard sex offender conditions. The USPO's recommendation is based largely on Defendant's previous conviction in 1997 for his participation in a violent and brutal gang rape of a sixteen year old female who was unconscious at the time of the sexual assault. The sex offender conditions include: 1) computer monitoring; 2) no loitering and volunteering near or in schools; 3) no contact with children; 4) no occupations involving children; and 5) no possession of sexually explicit material. The United

---

[2] The Government had originally requested the high end guideline range (27) months for the revocation, but at the hearing conducted on November 15, 2013 the Government modified its position to 24 months which is the statutory maximum.

States mostly agrees with Probation's recommendation, but believes that the conditions regarding employment should be eliminated and the condition regarding contact with children should be relaxed to permit Defendant to visit with his own children and other minor family members. Given the Government's position on these two conditions, the Court will not impose the occupational condition[3] and will modify the contact with children provision so as to permit Defendant to have supervised visits with his own children and other minor family members.[4] The United States and USPO disagree on whether Defendant should be required to seek approval prior of his probation officer prior to these supervised visits. The Court will discuss this issue further below.

This Court had previously imposed sex offender conditions on Defendant when he was sentenced on the underlying crime and Defendant appealed that decision. The Tenth Circuit upheld this Court's ruling that the sex offender conditions were reasonably related to the sentencing goals. See United States v. Mike, 632 F.3d 686, 693 (10th Cir. 2011). The Tenth Circuit found the Court's general rationale for imposing the sex offender conditions, i.e. "the results of psychological evaluations performed on Mike in 2004 and 2008, the nature of Mike's 1997 sexual offense, and the fact that Mike had failed to comply with his sex offender registration requirements," was sufficient to justify imposing the special conditions. Id. The Tenth Circuit partially reversed the imposition of certain special conditions on other grounds, which will be discussed further where relevant.

**Discussion**

**I.      Legal Standard**

---

[3] The Court agrees with parties that the statutory requirements for imposing a special condition affecting one's occupation are not present in this instance.

[4] The Court notes that its ruling that Defendant may have supervised visits with his own children would be subject to any orders entered by a court with jurisdiction over issues involving child custody or visitation.

Sentencing courts have broad discretion to fashion and impose special conditions of supervised release and special conditions need only satisfy three statutory requirements. United States v. Hahn, 551 F.3d 977, 983 (10th Cir.2008); see also 18 U.S.C. § 3583(d); USSG § 5D1.3(b). A special condition must be "reasonably related to one or more" of the following 18 U.S.C. § 3553(a) factors: the nature and circumstances of the offense, the history and characteristics of the defendant, and the goals of affording adequate deterrence, protecting the public from further crimes of the defendant, and providing the defendant with needed educational or vocational training. United States v. Begay, 631 F.3d 1168, 1174 (10th Cir. 2011); *see* 18 U.S.C. § 583(d)(1); see also 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(6). A special condition also must involve "no greater deprivation of liberty than is reasonably necessary for the purposes" of deterrence, protection of the public, and providing training and treatment to the defendant. 18 U.S.C. § 3583(d)(2). A special condition also must be "consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)." 18 U.S.C. § 3583(d)(3). Notably, the Tenth Circuit explicitly allows imposition of special sex offender conditions on supervised release even where the underlying conviction for the instant offense is not for a sex offense, provided that the district court makes the necessary findings regarding the imposition of sex offender conditions. United States v. Hahn, 551 F.3d 977, 983 (10th Cir. 2008); see also Mike, 632 F.3d 686; United States v. King, 431 F. App'x 630, *5 (10th Cir. Jun. 7, 2011).

## II.     The Proposed Special Conditions are Reasonably Related to the Sentencing Goals

"A sentencing court need not provide reasons for each specific special condition that it imposes; rather, it must 'only provide a generalized statement of its reasoning.'" See Mike, 632 F.3d at 693. Accordingly, the Court will address whether the proposed conditions as a whole are

reasonably related to the sentencing goals and will address Defendant's specific objections as needed.

The United States argues that the sex offender conditions are reasonably related to several of the sentencing factors, including: history and characteristics of Defendant, adequate deterrence, protecting the public from further crimes of Defendant, and treatment for Defendant. In support of its argument, the United States cites to the evaluation conducted by Defendant's expert, Dr. T. Gregory Kopp[5]. Dr. Kopp administered to the Defendant the STATIC-99 exam, a tool used to predict probability of recidivism amongst sex offenders. Defendant scored a 5 on this scale. Dr. Kopp stated that this score places Defendant in the "Moderate-High" risk category, with an estimated "33% chance of sexual reconviction in the first 5 years of liberty, a 38% chance of sexual reconviction over 10 years of freedom, and a 40% chance of sexual reconviction over 15 years in the community." See **(Doc. No. 53-3)**, Dr. T. Gregory Kopp's evaluation of Defendant, attached as Exhibit C to Defendant's Response to United States' Motion for Upward Variance, at p. 10. While the Government emphasizes the statistical risk that Defendants poses to society, Defendant points out that there is a 67% chance that Defendant will not commit another sex offense. Dr. Kopp emphasizes that "[t]he recidivism estimates provided by the STATIC-99 are group estimates based upon reconvictions and were derived from groups of individuals with these characteristics." Id. In response to this caveat, the Government argues that the group estimates do not take into account Defendant's other criminal history and history of failing to follow conditions of release, while Defendant argues that the

---

[5] The Government's motion for upward variance which also address the imposition of special conditions of release relied heavily on the evaluations of Defendant conducted by Dr. Michael Castenell. However, Defendant objected to the use of Dr. Castenell's evaluations for a number of reasons, including that he was not qualified to perform the evaluations. At the hearing, the Government appeared to concede that it is no longer relying on Dr. Castenell's evaluations. Accordingly, the Court did not rely on Dr. Castenell's opinions in deciding whether to impose special conditions of release.

group estimates falsely heighten Defendant's risk level because Defendant has not been given an opportunity to succeed given his sporadic incarceration throughout his adult life. Dr. Kopp himself noted that Defendant's score on this test "cannot and should not be ignored" in spite of the fact that the test does not take into account some of Defendant's specific characteristics. Id., p. 11.

Dr. Kopp also noted that Defendant struggles with a generalized anxiety disorder. Dr. Kopp stated that Defendant tends to act out when bored and he tends to become restless and prone to poor impulse control, aggression, sensation seeking, and risk-taking. Dr. Kopp generally noted that Defendant shows signs of struggling with impulse control and decision making. Although Dr. Kopp did not specifically observe any indications of violent behavior in regards to the clinical results, Dr. Kopp did note that Defendant appears to have trouble functioning "appropriately" in adult sexual encounters. Id., p. 8. Notwithstanding the fact that Dr. Kopp cautioned that these test results cannot be taken by themselves and must be considered in the context of the individual as a whole, he did note that Defendant's responses to certain test questions were "very similar" to those of members of the child molester comparison group and to those of members of the rapist comparison group. Id., p. 9. Defendant denied having any deviant sexual fantasies including rape or sexual contact with minors. Further, although Defendant acknowledged he was involved in the rape of an underage, unconscious female victim, he downplayed his role in this sex crime. Dr. Kopp expressed some concern that Defendant denied the "precursors" to his previous sex crime, including arousal and preparation. Id. At the hearing conducted regarding this matter, Defendant alleged that Dr. Kopp's report stated there was no evidence that Defendant continues to be at risk for a sex offense. This is an inaccurate statement; Dr. Kopp's report states *besides* the STATIC-99 test and the similarities

between Defendant's answers and those of sex offenders, there was no other evidence. In regards to Defendant's overall risk rate for committing another sexual offense, Dr. Kopp stated, "it is my prudent opinion that [Defendant's] level of dangerous [sic] continues to be appropriately classified as Medium-High Risk." Id., at p. 11.

The sex offender conditions are reasonably related to the sentencing goals of 18 U.S.C. § 3553(a)(2) including promoting respect for the law, providing just punishment for the offense, , affording adequate deterrence to criminal conduct, protecting the public from further crimes of Defendant and providing Defendant with needed correctional treatment (i.e. sex offender treatment) in the most effective manner. As the sentencing goals relate to Defendant, protecting the public from further crimes of Defendant is, in the Court's view, the most important sentencing goal considering Defendant's lengthy criminal history including his 1997 involvement in the gang rape of an unconscious minor victim, the facts of which, Defense counsel accurately stated are ugly. See (**Doc. No. 136**), Defendant's Response to United States' Motion for Upward Variance, at p. 2. Even though Defendant has not committed another sex crime since, he has shown a continual disregard for the law and has chronically violated his conditions of release. Defendant argues that at some point he must stop being punished for the past sex crime and that time is now because, although Defendant continued to commit crimes after his initial sex crime, he has not been involved in another sex offense since. It has been sixteen years since Defendant's sex offense. Defendant argues that the Tenth Circuit's decision in United States v. Dougan, 684 F.3d 1030 (10th Cir. 2012) definitively holds that Defendant's past sex crime is too remote to be reasonably related to sex offender conditions. In Dougan, the Tenth Circuit indicated that a seventeen year old sex crime was too remote to be reasonably related to the sex offender conditions based upon the specific facts before it. See Dougan, 684

7

F.3d 1030, 1037 (10th Cir. 2012) (explicitly stating that the Court's decision was based upon the specific facts of that particular case). Although the Court ultimately held the past crime was too remote to consider for the purposes of imposing special conditions, the Tenth Circuit stated it was "hesitant to agree that a defendant's sex-offense-free record in prison is as probative of his proclivities as a similarly blemish-free period of time while at liberty." Id. Accordingly, while "[it] [did] not discount them entirely, [it did] not treat [Defendant's] periods of incarceration since his 1994 conviction the same as his periods out of prison." Id. The facts in Dougan are distinguishable from those present here. The Government in Dougan was relying solely on the previous conviction and did not provide any other evidence supporting the imposition of the sex offender conditions. Id. Here, there is other evidence of Defendant's proclivity to commit another sex offense (discussed further below) beyond his sixteen year-old conviction. Considering that Defendant has spent a significant portion of his life since being released from prison for the 1997 sex crime based on Defendant's repeated violations of conditions of supervised release and based on new criminal convictions for which Defendant was sentenced to prison, he simply has not had much time out of prison and thus, has not had the same opportunity to commit a sex offense that an individual not incarcerated would have.

Further, Defendant's own expert concluded that Defendant presents a moderate to high risk of recidivism. Dr. Kopp also pointed out that Defendant does well in a regimented environment and that a lack of structure is Defendant's enemy. Dr. Kopp further noted that Defendant's responses to the test questions were very similar to those of sex offenders. While this similarity does not give rise to a certainty that Defendant will reoffend, it suggests that Defendant is prone to committing another sex offense. Based upon the battery of tests he administered to Defendant, Dr. Kopp classified Defendant as a medium to high risk for

8

committing another sex offense. The Court is especially convinced by Dr. Kopp's opinion given the fact that he was the expert Defendant selected to perform his psychological evaluation.

The Court also notes that Defendant has a well-documented history of alcohol abuse. Defendant's criminal history, including his involvement in the gang rape of an unconscious underage victim and the violent assault on an elderly victim, goes hand in hand with his alcoholism. Defendant's alcoholism is clearly not under control, because he stands before this Court having admitted that he left a treatment facility without permission and proceeded to get so intoxicated that he was unconscious when the United States Marshall's Service knocked on his door twelve hours later.

The Court has serious concerns that Defendant's addiction to alcohol will cause him to be involved in criminal activity in the future, including potentially another sexual assault. Defendant has managed to reach criminal history category VI by the relatively young age of thirty-five and his criminal history tends to show that when he commits a crime, he is usually intoxicated. Additionally, Defendant's criminal history is replete with instances where he violated his conditions of supervised release. In fact, it appears Defendant has never successfully completed a term of supervised release. Specifically, Defendant has violated his terms of supervised release thirteen times, seven of which included new law violations. Accordingly, the Court finds that the proposed special conditions, including sex offender conditions, are reasonably related to the factors to be considered in imposing a sentence on Defendant that is sufficient, but not greater than necessary, to comply with paragraph 2 of 18 U.S.C. § 3553(a).

**III.    The Specific Proposed Special Conditions are not More Restrictive than Necessary**

In addition to objecting on the grounds that the proposed special conditions were not

reasonably related to the sentencing factors, Defendant also argues that the proposed special conditions are a greater deprivation of his liberty than is reasonably necessary. For the reasons stated below, the Court overrules Defendant's objections on this ground.

### A. *Possession of Sexually Explicit Material*

Defendant objects to the condition preventing him from possessing sexually explicit material. Defendant argues that this specific condition is inappropriate because it is a greater deprivation than necessary. The Tenth Circuit previously upheld the application of this exact condition to Defendant. See Mike, 632 F.3d at 701 ("Given the current state of the law, we cannot say that it is clear or obvious that the imposition of a condition prohibiting a defendant, who has committed a sexual offense, but not a sexual offense involving pornography, from possessing legal, adult pornography is a greater deprivation of liberty than is reasonably necessary."). It should be noted that in the previous case, the Tenth Circuit was applying clear error rather than the abuse of discretion standard that typically applies. Defendant points to United States v. Kelly, 625 F.3d 516, 519 (8th Cir. 2010), in support of his argument that this special condition is overly broad. The Eighth Circuit's decision has little persuasive value in light of the Tenth Circuit's decision regarding Defendant specifically. Further, the special condition in Kelly banned any material containing nudity; that condition is far broader than the one at issue here. Accordingly, the Court finds that the condition regarding sexually explicit material is not a greater deprivation than necessary.

### B. *Computer Monitoring Conditions*

Defendant also objects to the computer monitoring conditions. The Tenth Circuit previously held that this condition was reasonably related to the sentencing goals, but reversed this Court's imposition of the condition because it found the conditions imposed were too vague.

See Mike, 632 F.3d at 694.[6] Defendant renews his objection that these restrictions are too vague. The proposed computer monitoring condition is identical to the condition in the previous case. Accordingly, the Court is bound by the Tenth Circuit's decision that the condition is overly vague. Therefore, the proposed computer monitoring condition must be amended to specify that it only applies to computers owned by Defendant or solely in his possession. The computer monitoring conditions may not be imposed on an employer's computer, because the statutory requirements for such an occupational condition are not present here.

Defendant also argues that the computer monitoring conditions are more intrusive than necessary; the Tenth Circuit did not reach this issue in the previous case. Defendant argues that requiring Defendant to submit to searches that are not based upon reasonable suspicion is an impermissible condition. Defendant's argument misstates the law. The United States Supreme Court has upheld a requirement that parolees submit to random searches even without reasonable suspicion. Samson v. California, 547 U.S. 843, 857 (2006). Although Samson concerned a state law provision regarding paroles, the Supreme Court noted the similarities between those on parole and those on federal supervised release. See id. (noting that federal supervised release (similar to parole) is more akin to imprisonment than probation because it is in addition to rather than in lieu of imprisonment). Therefore, Defendant's argument that this condition violates Defendant's Fourth Amendment rights fails. Further, the Court finds that this condition is not unduly restrictive. It does not ban Defendant from using any computer at all, the Government simply asks for Defendant's computer use to be monitored. Accordingly, Defendant's objection to the computer monitoring conditions is overruled, however, the proposed computer monitoring

---

[6] As noted above, the Court has already determined that this condition is reasonably related to the sentencing goals; the Tenth Circuit has previously rejected Defendant's argument that because Defendant has never used a computer to commit a crime, this condition is not related to the sentencing goals. See Mike, 632 F.3d at 693. (noting that "[w]hile [] [Defendant']s offense of conviction did not involve a computer and there is no evidence in the record showing that [Defendant] had a history of using computers in an abusive manner," the Court did not abuse its discretion in imposing computer monitoring conditions).

11

conditions will be amended as above noted.

      C.    *Contact with Children*

The Court has already stated that the contact with children special condition shall be amended to allow Defendant supervised contact with his children and other minor family members. As noted above, the USPO recommends that Defendant be required to obtain approval from his probation officer prior to these supervised visits. In order to restrict Defendant's contact with his own family members, the Government must demonstrate compelling circumstances. See United States v. Smith, 606 F.3d 1270, 1284 (10th Cir. 2010). "A district court abuses its discretion where it imposes such a condition in the absence of a record that "unambiguously support[s] a finding" that the defendant is a danger to his own family members." United States v. Lonjose, 663 F.3d 1292, 1303 (10th Cir. 2011) (citation omitted). The United States notes it is difficult to decipher whether compelling circumstances are present in this case, thus, the United States appears to recommend the supervised visits with minor family members not be subject to prior approval by Defendant's probation officer.

The Court first finds that the proposed condition is not a greater deprivation than necessary to protect the public in light of Defendant's history and characteristics in regards to non-related minors. Defendant has previously been convicted of the brutal gang rape of an underage and unconscious victim. The underlying crime charge in this instance involves Defendant's vicious assault of an elderly victim that caused several broken bones and left his victim wheelchair bound. These acts, coupled with Defendant's refusal to admit to certain aspects of his participation in the gang rape[7], raise serious concerns that Defendant will continue to take advantage of those who are vulnerable in society. See Smith, 606 F.3d at 1283

---

[7] Dr. Kopp raised concerns that Defendant failed to admit that he was aroused somewhat by either the victim's age or vulnerability due to her being unconscious.

(upholding the special condition prohibiting Defendant from having contact with minors where the district court determined that Defendant was more likely to attack vulnerable victims based upon his previous rape of an unconscious victim).

While Defendant's proclivity to attack especially vulnerable victims supports the restriction on Defendant's interaction with non-relative minors, the Court must delve further to determine whether Defendant poses a risk to his minor family members, especially his own children. The Pre-Sentence Report ("PSR") provides sparse information regarding Defendant's interaction with minor family members. The PSR incorrectly states that Defendant has a son, however, Defendant has a daughter. Although there is no information provided as to the reason for this belief, the PSR states that the child is believed to be around eight years old. This information was also incorrect; Defendant clarified that his daughter is fifteen years old and lives her mother. No additional information regarding Defendant's interaction with his daughter or her mother is provided. There is simply not enough information to provide this Court with a compelling justification for interfering with Defendant's familial association[8]. The Tenth Circuit has found the imposition of a special condition that interferes with a defendant's right to familial association to be an abuse of discretion in a case with far more compelling facts that those present here. See Lonjose, 663 F.3d at 1303 (holding that where an adult defendant fathered a child with a twelve year old girl, the district court had no compelling reason to limit Defendant's contact with male minor family members because there was no indication that Defendant was dangerous to male minors, only female minors).

Notwithstanding the Tenth Circuit's holding in Lonjose, the Court agrees with the

---

[8] The Court notes that although Defendant has not yet been sentenced regarding the escape charge and the violation of his conditions of supervised release, he is facing a significant period of incarceration. Therefore, it is likely that Defendant's daughter will be eighteen by the time Defendant is released and could potentially have any contact with his daughter. However, the Court addresses this issue because it is also relevant to Defendant's other minor family members.

USPO that under the facts and circumstances of Defendant's underlying conviction and his history and characteristics including his lengthy criminal history, Defendant's supervised visits with any minor children should be initially be subject to his probation officer's approval for the following reasons.  First, considering Defendant's lengthy criminal history, there is a strong need to protect the public including Defendant's family members from potential future crimes of Defendant.   As noted previously, Defendant has reached Criminal History Category VI by the relatively young age of thirty five.  The USPO should be involved to determine whether minor children related to Defendant wish to see him, whether their parents approve of such visitation, and whether Defendant will be operating a motor vehicle transporting any minor children.  The last point is especially relevant given Defendant's history of alcohol abuse and several previous convictions and/or arrests for driving while intoxicated.  Finally, the USPO must determine who will be supervising these visits and whether the proposed supervisor is an appropriate one. Therefore, there is a compelling reason to have USPO involved in making determinations regarding these types of issues as the conditions are reasonably related to furthering the sentencing goals as above outlined.

    *D.*    *Search*

Defendant objects to the proposed special condition requiring Defendant to submit to random searches where the probation officer has reasonable suspicion that Defendant has committed a crime and/or violated a condition of his supervised release.  The Court will grant Defendant's request to revise the special condition so that it is clear that the search condition does not apply to property owned by Defendant's employer, as that would amount to an occupational condition which is not justified here.  The Court will impose the search condition to

Defendant's personal property. The Court finds that given the moderate to high risk[9] that Defendant will reoffend and his serious alcohol problem, this restriction is not greater than necessary to accomplish the sentencing goals. The Court believes that this search condition will help to impose the structure that Defendant requires to be successful.

## Conclusion

The remaining proposed conditions not specifically addressed above will be imposed, because Defendant has not objected to them, and because the Court determines they are reasonably related to the sentencing goals, are not a greater deprivation than necessary, and do not conflict with the stated policy of the Sentencing Guidelines. The Court further notes that the same three factors are met for those conditions to which the Court did not sustain Defendant's objection.

**THEREFORE, IT IS ORDERED**, that Defendant's objections to the proposed special conditions of release are **OVERRULED in part and SUSTAINED in part.**

**IT IS FURTHER ORDERED**, the proposed contact with children condition will be amended to allow Defendant supervised visits with his own child and minor family members with the prior approval of his probation officer, the computer monitoring condition will be amended to describe to which computers it applies, the search condition will be amended to reflect it does not apply to Defendant's employer's property, and the proposed occupational special condition will not imposed. All other proposed special conditions will be imposed as outlined in the Pre-Sentence Report.

---

[9] Dr. Kopp's classification of Defendant as being a moderate to high risk of re-offense only applied specifically to a sex offense. Dr. Kopp's analysis did not take into account the risk that Defendant may commit any another crime. The Court believes Defendant has an extremely high chance of reoffending given Defendant's severe alcohol problem, the fact that Defendant has never successfully completed a term of supervised release, and Defendant's demonstrated pattern of targeting particularly vulnerable victims.

_____
UNITED STATES DISTRICT JUDGE